20826. MACON CIGAR & TOBACCO CO. *v.* BERRIMAN BROTHERS INC.

DECIDED MARCH 31, 1931.

*Jones, Jones, Johnston & Russell,* for plaintiff in error.
*Ryals, Anderson & Anderson,* contra.

LUKE, J. Berriman Brothers Incorporated brought an action in the municipal court of Macon against Macon Cigar & Tobacco Company for $167.20 alleged to be a balance due the plaintiff under two contracts for cigars, said contracts being evidenced by two written orders for cigars, the acceptance for the same, and the invoices therefor. Attached to the petition as exhibits are copies of the writings alleged to constitute said contracts. The first three of these exhibits follow:

"Order No.                                           Date Oct. 5/28.
M. Berriman Bros. Inc., Tampa, Fla.

Ship to Macon Cigar & Tobacco Co., at Macon, Ga.
How ship. Freight via Seaboard and M. D. & S.
Terms Reg.                        When. Nov. 15.
Salesman ——————————— Buyer ————————————
500 Jose Villa Queen. 2500 Jose Villa Invincibles.
All 1/40s—And as many Claro as possible.
Christmas Order.
Boyle.                                        L. A. Walker."
"Berriman Brothers Inc., Makers Habana Cigars, Tampa, Florida.
                                        "Oct. 9, 1928.

Macon Cigar & Tobacco Co.        Salesman. Leon (Boyle)
Macon, Ga.                        Order No. 1416 Requisition
                                  Bo. Terms 2/30.
When. Nov. 15.            Via Prepaid S. A. L. M. D. & S.

| Quantity. | Brand. | Front Packing. | Bands. | Colors. | Price. |
| | | Mark and Class. | CCC. | C CM. | Price. |
| 500 | Jose Villa Queens | 1/40C | most | | .95 |
| 2500 | Invincibles | 1/40C | most | | .75 |
| 3000 | | | | Less 12%. | |

Acknowledgment. This is an acknowledgment of your valued
order, for which please accept our thanks. If incorrect in any
way, please notify us at once."
"Berriman Bros. Inc.                                107.
Highest Quality Havana Cigars                .Case 1065
Tampa, Fla., Nov. 9, 1928            Weight 125#.
    Sold to Macon Cigar & Tobacco Co., Macon, Ga.
Via Prepaid SAL MD&S Order.
Terms: 2% 30 Net 60 F. O. B. Ga.        Salesman Leon (Boyle).
Pay no money to salesman without our written authority.
In the event of failure, sale or change in business before maturity
this bill becomes due and payable.
The only terms and conditions of this sale appear on invoice.

| 500 Jose Villa Queens | 1/40 | 95 | 47.50. |
| 2500 Invincibles | " | 75 | 187.50. |
| 3000 | | 12% | · 235.00. |
| | | 28.20 | 206.80." |

    Since the order, acknowledgment, and invoice for the second lot
of cigars referred to in the petition differ in no material respect
from the exhibits copied above, we shall not set them out.

In its original answer the defendant admits "placing orders for cigars as alleged," admits "the acknowledgment of said orders and the invoicing of said cigars," and admits that "cigars as shipped and invoiced under said orders remain unpaid in the amount of $167.20." The defendant further pleaded, however, that the said cigars were sold to defendant by J. R. Leon, a salesman in the employ of plaintiff, and that at the time of taking said orders said salesman "guaranteed the sale of said cigars;" that said agent "was authorized to make said guarantee, and was acting within the apparent scope of his authority in making said guarantee;" that said cigars had not been sold, "notwithstanding a sincere and earnest effort on defendant's part to sell them;" that plaintiff had declined to abide by said guarantee, and had breached the same, "to defendant's injury and damage in the sum of $167.20;" and that said cigars were in defendant's possession "subject to return to plaintiff, or to such disposition as plaintiff directs." The defendant further pleaded that prior to October 5, 1928, it purchased from plaintiff large quantities of cigars which had been paid for; that said cigars were sold through plaintiff's agent, J. R. Leon, who "guaranteed the sale of each and every cigar purchased by defendant from plaintiff;" that said Leon, "in making said guarantee, was acting within the scope of his authority and within the apparent scope of his employment;" that after making diligent effort to sell said cigars, defendant had left on hand $350 worth of them which it had not been able to sell; and that, though so requested to do, plaintiff refused to make good its guarantee, and was liable to defendant in said sum of $350.

Plaintiff demurred to defendant's answer as follows: 1. Because, after admitting the written contract declared upon, the defendant sought to vary it "by setting up an oral contract in contradiction and defense thereto." 2. Plaintiff demurred to that part of defendant's answer which sought to set up its $350 claim, upon the ground that it was too indefinite and failed to show either the quantity or the prices of the cigars alleged to have been purchased by defendant; and, further, because it was not alleged whether said articles were bought under an oral or a written contract. On January 3, 1930, the court "adjudged that the demurrers of plaintiff be sustained on each and all the grounds thereof." On January 10, 1930, the court vacated this order and

allowed the defendant to amend its answer. In its amendment the defendant averred that "the contract between defendant and plaintiff . . was an oral contract entered into on October 5, 1928, the said J. R. Leon acting for and by authority from plaintiff, and L. A. Walker acting for this defendant;" that "said oral contract was complete in and of itself;" that "as the result of said oral contract defendant agreed to buy and plaintiff agreed to sell said cigars at a price of $38 per thousand, less 12 per cent;" that "pursuant to said oral contract said J. R. Leon wrote out a memorandum order, a copy of which is attached to plaintiff's petition, marked exhibit 'A;'" that said memorandum order "did not and was not intended to embody all the terms of said oral contract, and does not on its face purport to embody all the terms of said oral contract, in that it does not disclose the terms thereof, the price to be paid for said cigars . . ;" and that "said order was thereafter acknowledged as alleged in plaintiff's petition, and said cigars were thereafter shipped, and defendant was invoiced therefor as alleged in plaintiff's petition, but neither said acknowledgment nor said invoice constitutes the contract between plaintiff and defendant under which said cigars were purchased." The defendant further amended that part of its answer which had reference to its counterclaim of $350, by averring that "the cigars referred to were purchased by defendant from plaintiff on August 4, 1928;" that "said contract of purchase was an oral contract," by the terms of which defendant purchased from plaintiff designated quantities of described cigars at stated prices; that "said plaintiff was represented in the making of said oral contract of purchase by its authorized agent, J. R. Leon, as above set forth;" that said oral contract was complete within itself, and was not required to be, or intended to be, subsequently accepted by plaintiff or defendant, or by any person whatsoever, to make it a complete contract; that "said guarantee of the sale of said cigars was orally made by the said J. R. Leon, and was part of the said oral contract of purchase;" that "said J. R. Leon then made a written memorandum of said oral contract," which was not signed by either party; that "said written memorandum did not, and was not intended to, express all the terms and conditions of said oral contract, but was, and was intended only as, a memorandum of some of said terms;" that "said memorandum order was thereafter acknowledged by

plaintiff, and said cigars were thereafter shipped and invoiced by plaintiff," but that "neither said acknowledgment nor said invoice constituted a contract of purchase between plaintiff and defendant;" and that copies of said order, acknowledgment, and invoice were attached to the answer. The copy of said order is similar in form to the copy-order attached to the petition. It sets out the quantities, varieties, and prices of the cigars ordered, but is unsigned. The copies of the acknowledgment and invoice attached to the answer are so similar to the corresponding papers attached to the petition that it is not necessary to set them out.

Plaintiff's demurrer to the foregoing amendment is substantially as follows: 1. The first paragraph of said amendment "seeks to set up an oral contract to vary and contradict the terms of the written contract sued on by plaintiff." 2. The second paragraph of said amendment "attempts to vary and contradict the terms of the written contract which is therein admitted to have been executed, and which is set out and referred to by exhibits."

On January 10, 1930, the court adjudged that "both the demurrer to the answer and the demurrer to the amendment to the answer be . . sustained on each and all the grounds set out, except the second ground of the original demurrer, which was met by amendment."

When the case came on to be heard on January 16, 1930, the court sustained plaintiff's written motion to strike defendant's answer as amended, declared the case in default, and rendered a judgment for plaintiff for $167.20, principal, and interest and costs.

The defendant properly preserved its exceptions to the adverse rulings of the trial judge, and by certiorari took the case to the superior court. The exception here is to the judgment overruling the certiorari.

It is true that a traveling salesman is a special agent whose authority is presumed to be limited to taking orders to be transmitted to his principal for acceptance. *Dannenberg Co.* v. *Hughes,* 30 *Ga. App.* 83, 85 (116 S. E. 892). However, such a presumption does not exist where the salesman has plenary authority to make a complete contract in behalf of his principal; and we are satisfied, from a careful perusal of the answer as amended, that it substantially alleges that J. R. Leon had authority to make in behalf of his principal the alleged oral contract and the alleged

guarantee as a part of it, and that the cigars were purchased and delivered under said oral contract. Assuming that the alleged oral contract was complete in itself and that said orders were "memorandum orders" as alleged, this court declines to hold, as a matter of law, that said acknowledgments, or said invoices, or both together, coupled with the receipt of the cigars by the defendant, had the effect of changing the original oral contract or of substituting another contract therefor. In conclusion we hold that the judge of the municipal court erred in sustaining the demurrer and striking the answer, and that the judge of the superior court erred in overruling the certiorari.

*Judgment reversed.* *Broyles, C. J., and Bloodworth, J., concur.*